Application for Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| **In the Matter of the Search of:** | James Owusu Tetteh, XX/XX/1996 |
| James Owusu Tetteh, XX/XX/1996 | **Case No.** MJ21-5073 |

FILED _____ LODGED
_____ RECEIVED

**Apr 05, 2021**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT FOR BLOOD SAMPLE

I, Connor Funkhouser, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that a sample of blood consisting of one of more tubes or vials should be taken from the following person:

James Owusu Tetteh, XX/XX/1996

located in the Western District of Washington and that this blood sample is evidence of the following crime or crimes.

☒ Driving While Under the Influence in violation of RCW 46.61.502, 18 U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

☐ Physical Control of a Vehicle While Under the Influence of Alcohol or Drugs in violation of RCW 46.61.504, 18 U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

☐ Driver under Twenty-One Consuming Alcohol or Marijuana in violation of RCW 46.61.503 and 18 U.S.C. § 13

☐ Vehicular Homicide in violation of RCW 46.61.520 and 18 U.S.C. § 13

☐ Vehicular Assault in violation of RCW 46.61.524 and 18 U.S.C. § 13

☐ _____

This application is based on the facts set forth in the attached affidavit which is incorporated herein as if fully set forth.

Pursuant to Fed. R. Crim. P. 4.1 & 41(d)(3), this warrant is presented:

☒ By reliable electronic means.          ☐ Telephonically (and recorded).

Applicant's Signature
Connor Funkhouser, Traffic Investigator
Joint Base Lewis-McChord Military Police

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 3rd day of April, 2021.

THE HON. J. RICHARD CREATURA
UNITED STATES MAGISTRATE JUDGE

STATE OF WASHINGTON    )
                                 )    ss

COUNTY OF PIERCE       )

## AFFIDAVIT OF XX

I,  Connor Funkhouser, a Traffic Investigator with Joint Base Lewis-McChord Police, Pierce County, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1.      I have served as a law enforcement officer for the past 4 years. My training and experience relevant to the investigation discussed below includes the following:

☐      Basic Training at the Federal Law Enforcement Training Center

☒      Basic Law Enforcement Academy at the Washington Criminal Justice Training Commission

☒      Standardized Field Sobriety Testing

☐      Advised Roadside Impaired Driving Enforcement Training

I am SGT Connor Funkhouser, currently assigned to the Joint Base Lewis-McChord (JBLM) Military Police Traffic Management and Collision Investigation Section (TMCI) as a Traffic Investigator. I have completed 19 weeks of Military Police Training at One Station Unit Training in Fort Leonard-Wood. My training includes Standard Field Sobriety Tests (SFSTs) at Joint Base Lewis-McChord. My certification was completed August of 2020 in accordance with The National Highway and Transportation Safety Administration (NHTSA) standards. I also completed training and certification on the Draeger Alcotest in August 2020. I am also trained to recognize the signs and evidence of an alcohol and/or drug related collision. Through my past training and experience I have learned to recognize the signs of alcohol and/or drug impairment in people and to determine whether or not a person's ability to drive a motor vehicle safely is impaired. I also know from my past training and experience that most drugs once ingested, including

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    alcohol, will be detectable in a person's blood. I have completed approximately 6 DUI

2    arrests throughout my law enforcement career.

3        2.      The information presented in this affidavit is:

4            ☒    Based on my personal observations and interviews that I have
5                 conducted.

6            ☐    Based on the personal observations and interviews conducted by xx
7                 **Name of Officer or Officers**, who is/are xx **Title** and xx **Agency**.  I
                  have learned that this individual has received the following relevant
8                 training and has xx years of experience as a law enforcement officer.
9                 xx *(Add Any Additional Relevant Training and Experience of
                  Investigating Officer Here)*

10                    INTRODUCTION AND PURPOSE OF THE AFFIDAVIT

11       3.      The purpose of this affidavit is to seek a search warrant to authorize me or

12   other law enforcement officers to direct a physician, a registered nurse, a licensed

13   practical nurse, a nursing assistant as defined in Chapter 18.88A of the Revised Code of

14   Washington (RCW), a physician assistant as defined in chapter 18.71A of the RCW, a

15   first responder as defined in chapter 18.73 of the RCW, an emergency medical technician

16   as defined in chapter 18.73 of the RCW, a health care assistant as defined in chapter

17   18.135 of the RCW, or any technician trained in withdrawing blood to extract a blood

18   sample consisting of one or more tubes or vials from James Owusu Tetteh, (hereafter "the

19   Subject"). This warrant is requested for the purpose of gathering evidence of the

20   following crime(s):

21           ☒   Driving While Under the Influence in violation of RCW 46.61.502, 18
22               U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

23           ☐   Physical Control of a Vehicle While Under the Influence of Alcohol or
                 Drugs in violation of RCW 46.61.504, 18 U.S.C. § 13, and 36 C.F.R §
24               4.23 or 38 C.F.R. § 1.218

25           ☐   Driver under Twenty-One Consuming Alcohol or Marijuana in violation
26               of RCW 46.61.503 and 18 U.S.C. § 13

27           ☐   Vehicular Homicide in violation of RCW 46.61.520 and 18 U.S.C. § 13

28           ☐   Vehicular Assault in violation of RCW 46.61.524 and 18 U.S.C. § 13

             ☐   _____

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

4.      I am seeking to present this application for a search warrant by electronic means because the natural metabolization of alcohol or drugs in the bloodstream may result in the loss of this evidence in the time it would take to present a search warrant application in a more traditional fashion.

## SUMMARY OF PROBABLE CAUSE

5.      As a result of my duties I am familiar with the jurisdictional boundaries of Joint Base Lewis-McChord, Washington. The incident described below occurred within these jurisdictional boundaries, an area within the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7.

6.      The initial contact with the Subject occurred approximately 11:20 p.m. on April 2, 2021, at North Gate Road and Compass Ave. At approximately 11:20 p.m., I was dispatched to a single motor vehicle collision. I arrived on scene and observed a 2017 Honda Accord in the opposite lane of travel with extensive disabling damage. It appeared the subject lost control, went into a ditch, and rolled multiple times. The subject was identified by his Washington driver's license as James Owusu Tetteh, XX/XX/1996. Tetteh was evaluated by EMS but declined to be transferred to the emergency room. A witness stated that the subject was behind her, attempted to pass her, and then backed off. She stated that when she looked in her rear view mirror she saw him leave his lane of travel, crossed into oncoming traffic and entered a ditch. Entering the ditch subsequently caused the vehicle to spin out of control and roll.

7.      Based on my training and experience, I believe the Subject may be under the influence of intoxicants or drugs for the following reasons: I arrived on scene at approximately 11:35 p.m. and approached the subject. The subject was being evaluated by medical personnel. I began to ask the subject what happened and he stated that he did not remember. I detected an obvious odor of intoxicating beverages emanating from his breath and his words were slow and slurred. I asked the subject if he had his driver's license, and he stated it was in his car. I allowed him to retrieve it. I asked the Subject if he was injured as a result of the collision and he reported his neck hurt. When I asked the Subject if he had consumed any alcoholic beverages, he stated that he had. I asked the Subject if he would be willing to

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  submit to standard field sobriety tests (SFST) and he agreed. I walked the subject in front
2  of his car. I asked the subject if he had any physical defects, he stated "no." I asked if he
3  limps. He stated "no." I asked if he was sick or injured. He stated "no besides his neck."
4  I asked, are you under the care of a doctor or dentist. He stated "no." I asked him if he
5  has taken any medication/drugs in the past 24 hours. He stated, "no." I asked, is there
6  anything mechanically wrong with your vehicle? He stated "no." I asked, have you been
7  drinking alcoholic beverages? He stated "yes." I asked him, how much have you had to
8  drink? He stated, "2 shots oh Hennessey." I asked, when you started drinking. He stated
9  "9:00 AM." I asked, what was the time of your last drink? He stated "around and hour
10 ago." I conducted the Standardized Field Sobriety. The ground was well lit, level, and
11 dry.

12  　　　8.　　Before I conducted the Horizontal Gaze Nystagmus test, I asked the subject
13 if he was wearing contacts. He stated he was not. I instructed the subject to put his feet
14 together, heels and toes touching, and keep his arms at his side. I told him to stay in this
15 position. I told him to keep his head still and follow the tip of my pen with his eyes only.
16 He stated he understood. I began the test. I was roughly 12 to 15" away from the
17 subject's eyes when I was conducting my test. I completed 8 passes on the subject. I
18 checked for equal pupil size. His pupils were equal size. I checked for resting nystagmus,
19 I did not see resting nystagmus. I checked for equal tracking. The subject's eyes both
20 tracked equally. I checked for lack of smooth pursuit. The subject's eyes were unable
21 track smoothly. I checked for distinct and sustained nystagmus at maximum deviation.
22 The subject had distinct and sustained nystagmus at maximum deviation in both eyes. I
23 checked for nystagmus prior to 45 degrees. I observed nystagmus prior to 45 degrees in
24 both eyes. When observed, I stopped and confirmed the nystagmus. I checked for vertical
25 nystagmus and did not observe vertical nystagmus. The subject was told he could relax.

26  　　　9.　　I moved on to the Walk and Turn. Before the test I identified a line that we
27 would use for the test. The line we used was the fog line on the side of the road. During
28 the instructional phase of the Walk and Turn, the subject was instructed to put his left

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  foot on the line with his right foot in front of his left foot, with the heel of his right foot
2  touching the toe of his left foot. The subject was also instructed to keep his arms at his
3  sides and stay in that position until asked to begin. I demonstrated the starting position
4  and asked the subject to get into that position which he did. I told the subject, do not start
5  to walk until told to do so. The subject fell out of the starting position multiple times and
6  was instructed to get back into the starting position. He stated he understood. I told the
7  subject, when I ask you to start, take nine heel-to-toe steps down the line, turn around and
8  take nine heel-to-toe steps back. I demonstrated. I told the subject, when you turn, keep
9  your front foot on the line, and turn by taking a series of small steps with the other foot. I
10 demonstrated. I instructed, once you are walking, watch your feet at all times, count your
11 steps out loud, and keep your arms at your side. Once you start walking, do not stop until
12 you complete the test. I demonstrated the entire test. When asked, he stated that he
13 understood all of the instructions. I instructed the subject to begin. On the first 9 steps,
14 the subject missed heel to toe on his 4th step. The subject walked 10 steps, then began to
15 walk heel to toe backwards. He stopped walking and asked what do I do now? I
16 instructed him to complete the test in the manner prescribed. The subject turned around in
17 one quick motion and took 9 heel to toe steps back. The subject stepped off the line on
18 steps 4 and 5 on the way back. When the subject reached his 9th step I told him he can
19 relax.
20         10.     During the instructional phase of the One Leg Stand, I instructed the
21 subject to stand with his feet together touching heels and toes and to keep his arms at his
22 side. I demonstrated, the subject stated that he understood. The subject got into the
23 starting position and was told not to start until I tell him to do so. He stated he
24 understood. I told him when I tell you to begin, raise one leg (either leg) with your foot
25 approximately 6 inches off of the ground, keeping your foot parallel to the ground. I told
26 him to keep his raised leg straight while conducting this test. I demonstrated and the
27 subject stated the he understood.  I explained, while holding this position, count out loud
28 in the following manner: one thousand one, one thousand two, one thousand three, and so

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  on until I tell you to stop." I demonstrated what I explained so far and he stated he
2  understood. I told the subject to "keep his arms at his side the whole test and to watch his
3  raised foot." I demonstrated the test. He stated that he understood.  During the One Leg
4  Stand the subject elected to raise his right foot. I counted on my watch to thirty seconds.
5  When beginning the test the subject raised his right foot and started counting in the
6  prescribed manner. The subject was swaying while balancing. The subject hopped while
7  doing the test. When the test was complete, the subject was told he can relax.

8      11.    I asked the subject if he would provide a breath sample for a Preliminary
9  Breath Test (PBT). I explained to the subject the PBT did not suffice as a replacement for
10 the BAC. He voluntarily agreed to furnish a breath sample for the PBT. I used the Alco-
11 Sensor FST serial #023959, certification expiration date of 04/27/2021, to administer the
12 Preliminary Breath Test. I removed a new mouth piece from the plastic wrapping and
13 attached it to the machine. I pressed the on button and the device activated. The machine
14 made a self-check and the machine was found to be within normal operating standards
15 and working properly. When the digital display read blow, I instructed the subject to take
16 a deep breath, seal his lips around the tube, and blow like he was blowing out a candle.
17 the subject attempted to provide a breath sample but did not blow hard enough which
18 resulted in an insufficient flow error. This happened twice. For each attempt a new mouth
19 piece was used. On the third attempt the subject provided an adequate breath sample. The
20 machine subsequently displayed a reading of .121 at 12:11 a.m.

21     12.    At approximately 12:12 a.m., I concluded that the Subject was under the
22 influence of intoxicating liquor and/or drugs and unable to operate a motor vehicle safely.
23 I took the Subject into custody without incident. The subject was then read his Miranda
24 rights which he stated he understood.

25     13.    The subject was brought back to the Provost Marshalls Office and was read
26 his Miranda rights which he stated he understood. The subject waived his rights and
27 declined to speak with a lawyer. The subject was then read the Implied Consent Warning
28 for Breath and signed stating that he would provide two breath samples. When

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  conducting the breath samples the subject inhaled or would not blow strong enough. I
2  attempted two tests with two 15 minute observation periods.

3          14.    I came to the conclusion that the subject refused the tests.

4          15.    ☒      Has refused to take a breath Alcohol test on an instrument approved
5  by the State Toxicologist or a federal agency for such breath testing.

6                  ☐ Is being treated in a hospital, clinic, doctor's office, emergency medical
7                      vehicle, ambulance, or other similar facility, or is at a location that lacks
8                      an instrument approved by the State Toxicologist or a federal agency for
                       performing such breath testing, and has refused to submit to a blood
9                      test.

10                 ☐ Is incapable due to physical injury, physical incapacity, or other
11                     physical limitation of submitting to a breath alcohol test, and the
                       defendant has refused to submit to a blood test.

12                 ☐ Has refused to submit to a blood test at the request of the undersigned.

13                 ☐ Was not offered an opportunity to take a breath alcohol test on an
14                     instrument approved by the State Toxicologist or a federal agency for
                       such breath testing because:
15
16                       ☐ The available instrument is currently out of order

17                       ☐ The individual does not speak English and the implied consent
                            warnings are not available in a language that the defendant
18                          understands

19                       ☐ _____

20                 ☐ Submitted to a breath test on an instrument approved by the State
21                     Toxicologist or a federal agency for such breath testing but the breath
                       alcohol concentration reading of xx **BAC LEVEL** is not consistent with
22                     the defendant's level of impairment suggesting that the defendant is
23                     under the influence of a drug.

24         16.    A sample of blood extracted from the Subject if taken within a reasonable
25  period of time after he/she last operated, or was in physical control of, a motor vehicle,
26  may be tested to determine his/her current blood alcohol level and to detect the presence
27  of any drugs that may have impaired his/her ability to drive. This search warrant is being
28  requested within **5 hours** and **30 min** after the Subject ceased driving or was found in
in physical control of a motor vehicle.

AFFIDAVIT OF CONNOR FUNKHOUSER

BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CONCLUSION

17.     For the reasons stated above, I request authority to direct a physician, a registered nurse, a licensed practical nurse, a nursing assistant as defined in chapter 18.88A of the RCW, a physician assistant as defined in chapter 18.71A of the RCW, a first responder as defined in chapter 18.73 of the RCW, an emergency medical technician as defined in chapter 18.73 of the RCW, a health care assistant as defined in chapter 18.135 of the RCW, or a technician trained in withdrawing blood to extract a blood sample consisting of one or more tubes or vials from James Owusu Tetteh.

18.     This application for a warrant is being presented electronically pursuant to Fed. R. Crim P. 4.1 & 41(d)(3).

I certify (or declare) under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated this 3rd day of April, 2021.

Connor Funkhouser, Traffic Investigator
Joint Base Lewis-McChord

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit on 3rd day of April, 2021.

THE HON. J. RICHARD CREATURA
UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT OF CONNOR FUNKHOUSER
BLOOD WARRANT FOR James Owusu Tetteh

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970